UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HARVEY D. WICE,

    Plaintiff,                                    Case No. 07-10662

v.                                                      Hon. John Corbett O'Meara

GENERAL MOTORS CORP.,
a Delaware Corporation,

    Defendant.

_____/

**OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the court is Defendant General Motors Corporation's motion for summary judgment, filed August 28, 2008. Plaintiff, Harvey Wice, submitted a response on September 18, 2008; Defendant filed a reply brief on October 2, 2008. The court heard oral argument on December 11, 2008, and took the matter under advisement. For the reasons stated below, the court grants Defendant's motion.

**BACKGROUND FACTS**

Plaintiff is currently employed as a journeyman millwright at GM's Flint Engine South plant. As a millwright, Plaintiff is required to possess an in-plant driver's license and to drive mobile equipment such as fork trucks, portable cranes, bulldozers, and scissor lifts. Millwrights are responsible for projects and maintenance that take them throughout the one-million-square-foot plant. According to GM, driving mobile equipment to transport tools and parts within the plant is an essential function of a millwright's job.

GM requires millwrights to renew their in-plant driver's licenses every three years. As part of that process, the employees attend refresher training and must pass a medical exam. GM asserts that the purpose of the medical exam is to ensure that those employees who operate mobile equipment have the reflexes, musculature, visual acuity, and coordination to operate the equipment safely. GM also contends that the medical exam helps the company satisfy MIOSHA regulation R 408.12151, which requires that employees assigned to operate mobile equipment meet certain minimum fitness standards, including that they have corrected vision that meets the same requirements as those for a valid Michigan driver's license, have effective use of all four limbs, be of a height sufficient to operate the controls, have an unobstructed view over the controls and dashboard, have coordination between eyes, hands, and feet, and be free from known convulsive disorders and episodes of unconsciousness for a period of one year. During the exam, the plant nurse checks the employee's vision, heart function, blood pressure, blood sugar, lung function, hearing, reflexes, balance and his overall general condition. If the nurse determines that the employee has a condition that may interfere with the employee's ability to operate equipment safely, the nurse refers the employee to the plant doctor for further examination. The doctor then determines whether the employee's license renewal should be deferred until he is able to have his medical condition addressed by his personal physician.

Plaintiff has worked for GM since 1971 and has renewed his in-plant license (including passing the medical exam) several times since then. In 2001, Plaintiff refused to take the medical exam to renew his in-plant license. GM has attempted to work with Plaintiff to alleviate his concerns about the exam. For example, when Plaintiff objected to providing his parent's health histories, GM told him he did not have to answer the questions to which he objected. GM

also gave Plaintiff the opportunity to have the exam conducted by his own doctor. Plaintiff brought a note from his doctor stating that he was "able to work and drive and operate equipment." GM deemed this note insufficient and suggested that Plaintiff use a more detailed form provided by the company. Plaintiff refused.

Because Plaintiff would not take the medical exam, GM did not allow him to operate mobile equipment in the plant. As a result, GM had to use other millwrights to do Plaintiff's job when mobile equipment was needed. Between 2001 and 2006, Plaintiff was not allowed to work overtime because there might not be anyone else in the plant who could operate mobile equipment during that time. After Plaintiff filed this suit in early 2007, GM allowed him to work overtime again. Plaintiff claims to have lost approximately $150,000 in overtime.

Plaintiff filed this suit to challenge the medical exam requirement under the ADA, the Labor Management Relations Act, and as an invasion of privacy.

## LAW AND ANALYSIS

**I.     ADA Claim**

Under the ADA, employers are prohibited from

> [U]sing qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity . . . .

42 U.S.C. § 12112(b)(6). Further,

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

42 U.S.C. § 12112(d)(4)(A). It is GM's burden to demonstrate that its periodic medical exam for millwrights who operate mobile equipment is "job-related and consistent with business necessity." Id.

As a threshold matter, GM argues that Plaintiff's claim fails because his is not disabled and, therefore, is not protected by the ADA. Plaintiff need not be disabled, however, to challenge an allegedly improper medical inquiry under the statute. See, e.g., Conroy v. New York State Dept. of Correctional Serv., 333 F.3d 88, 94-95 (2d Cir. 2003) (citing cases); Roe v. Cheyenne Mountain Conf. Resort , Inc., 124 F.3d 1221, 1229 (10th Cir. 1997) ("It makes little sense to require an employee to demonstrate that he has a disability to prevent his employer from inquiring as to whether or not he has a disability.").

Plaintiff argues that GM is only entitled to order medical exams for an employee when there is a legitimate question as to whether that particular employee can do the essential functions of the job. Plaintiff contends that periodic exams for a class of employees, as required by GM here, are barred by the ADA. Contrary to Plaintiff's argument, there is no such blanket ban in the statute. Rather, as noted above, GM may conduct medical screening if it can show the screening is job related and consistent with business necessity. See, e.g., Conroy, 333 F.3d at 97-98; E.E.O.C. v. Murray, 175 F. Supp.2d 1053 (M.D. Tenn. 2001).

Relatively little case law exists regarding the proper interpretation of "business necessity" in this context. See Conroy, 333 F.3d at 97 (noting lack of case law regarding the "business necessity" of generally applicable policies as opposed to individual inquiries). The Conroy court fashioned the following standard:

> We endorse the views of the Ninth Circuit and hold that in proving
> business necessity, an employer must show more than that its

> inquiry is consistent with "mere expediency." An employer cannot simply demonstrate that an inquiry is convenient or beneficial to its business. Instead, the employer must first show that the asserted "business necessity" is vital to the business. For example, business necessities may include ensuring that the workplace is safe and secure or cutting down on egregious absenteeism. The employer must also show that the examination or inquiry genuinely serves the asserted business necessity and that the request is no broader or more intrusive than necessary. The employer need not show that the examination or inquiry is the only way of achieving a business necessity, but the examination or inquiry must be a reasonably effective method of achieving the employer's goal.

Id. at 97-98.

In this case, GM is concerned that employees who operate mobile equipment have the ability to do so safely. Ensuring a safe workplace is a business necessity. Plaintiff argues, however, that the medical exam is not necessary to ensure a safe workplace. Plaintiff suggests that the possibility of workplace accidents as a result of some unknown medical condition is remote. The court is persuaded, however, that screening employees for medical conditions that may interfere with their ability to drive mobile equipment safely is a "reasonably effective method" of achieving GM's goal of a safe workplace. Common sense suggests that GM should not have to wait for an accident to occur to justify screening employees. Moreover, GM did not require Plaintiff to see the plant nurse or doctor, but allowed him to provide a medical certification from his own doctor.

Significantly, GM does not automatically exclude employees from driving who have certain medical conditions, such as high blood pressure or diabetes. Cf. Murray, 175 F. Supp.2d at 1062-63 (forklift operators automatically excluded based upon certain medical conditions). Rather, GM refers such employees to their personal physicians to ensure that their conditions are

-5-

under control and that the employees can perform the functions of the job. Id. (noting that employer may defend medical screening under ADA by proving that "its qualification standards are based on actual ability rather than on general physical or mental impairment and that they are 'necessary for the operation of [its] business'"). GM does *not* appear to be engaging in "precisely the type of behavior that the ADA was designed to prevent: making employment decisions based upon generalized assumptions about physical and mental impairments without determining the individual capabilities of each employee with the specific impairment." Id. at 1064. See generally Smith v. Chrysler Corp., 155 F.3d 799, 805 (6th Cir. 1998) ("The thesis of the [ADA] is simply this: That people with disabilities ought to be judged on the basis of their abilities; they should not be judged nor discriminated against based on unfounded fear, prejudice, ignorance, or mythologies; people ought to be judged on the relevant medical evidence and the abilities they have.").

In sum, GM has sufficiently shown that the medical exam is job-related and necessary to the operation of its business. The court will grant summary judgment.

**II.     LMRA Claim**

Plaintiff has also brought a claim against GM pursuant to Section 301 of the Labor Management Relations Act, alleging that the company violated the collective bargaining agreement by refusing to allow him to work overtime. In order to pursue a Section 301 claim, Plaintiff must first exhaust the grievance procedure provided by the CBA. DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 163-64 (1983). Plaintiff has not exhausted his administrative remedies, as his grievances are still pending. Further, Plaintiff has not demonstrated that exhaustion is futile. See id. Accordingly, judgment in favor of Defendant is

appropriate on this claim. See Winston v. General Drivers, Warehousemen & Helpers, Local Union No. 89, 93 F.3d 251, 255 (6th Cir. 1996).

## III. Invasion of Privacy Claim

Likewise, Plaintiff has failed to state a claim for invasion of privacy. See Lewis v. Dayton Hudson Corp., 128 Mich. App. 165, 339 N.W.2d 857 (1983). To state such a claim, Plaintiff must demonstrate: "1) an intrusion by defendant; (2) into a matter which plaintiff has a right to keep private; (3) by the use of a method which is objectionable to the reasonable person." Id. Plaintiff has cited no legal authority supporting his contention that Defendant's medical examination requirement served to impermissibly invade his privacy.

## ORDER

Accordingly, consistent with this opinion, IT IS HEREBY ORDERED that Defendant's August 28, 2008 motion for summary judgment is GRANTED.

s/John Corbett O'Meara<br>
United States District Judge

Date: December 15, 2008

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, December 15, 2008, by electronic and/or ordinary mail.

s/William Barkholz<br>
Case Manager